IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE S. LEHMAN, individually and on behalf of a class of similarly situated persons, | ) ) ) | No. 00 C 8137 |
| Plaintiffs, | ) ) ) | Suzanne B. Conlon, Judge |
| v. | ) ) | |
| ADECCO NORTH AMERICA, L.L.C., d/b/a CO-COUNSEL, INC. and ADO STAFFING, INC. f/k/a OLSTEN CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Julie S. Lehman ("Lehman"), individually and on behalf of all those similarly situated,[1] sues

Adecco North America, L.L.C., d/b/a Co-Counsel ("Co-Counsel") and ADO Staffing, Inc. f/k/a Olsten

Corporation (collectively "defendants") for sex discrimination in violation of Title VII of the Civil

Rights Act of 1991, 42 U.S.C. § 1981(a) ("§ 1981") (Count I), and for disability discrimination in

violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12117 *et seq.* (Count II).

Lehman contends she was denied a right to health coverage for infertility treatment and terminated for

attempting to get pregnant. Defendants move to dismiss Count II, pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the

complaint as true and draws all reasonable inferences in favor of the nonmovant. *Stachon v. United*

---

[1]As of this date, Lehman has not filed a motion for class certification. Therefore, defendants' arguments pertaining to why Lehman is not an appropriate class representative will not be addressed in this decision. Pursuant to the court-established schedule, Lehman has until April 20, 2001 to file a motion for class certification.

*Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Lehman was hired by Co-Counsel as a director of attorney marketing in 1996. In this capacity, Lehman contacted law firms and corporations to secure temporary employment contracts for attorneys and paralegals identified by Co-Counsel. Co-counsel assigned each Chicago-area director a territory, consisting of identified firms and companies that might need new attorneys or paralegals. Unlike other directors' territories, Lehman's territory consisted of firms and companies that were not currently doing business with Co-Counsel. Nevertheless, Lehman exceed Co-Counsel's sales goals by the end of 1997. As a result of her success, Co-Counsel requested that Lehman train other marketers across the country.

By the end of 1997, several female Co-Counsel directors had become pregnant or taken maternity leave. Around this time, Lehman had a discussion with her immediate supervisor and James Kosciolek, managing director of the Chicago office. During this meeting, Kosciolek allegedly stated that two Co-Counsel executive officers and a supervisor expressed concern that the director position was perceived as a "mommy track." Kosciolek further stated he and others in his position were under pressure to hire male directors. Shortly before or after this conversation, Lehman told Kosciolek that she was attempting to get pregnant and was contemplating initiating treatment for infertility.

On January 31, 1998, Lehman became involved in a verbal altercation with a female co-worker. Co-Counsel sent her an employment termination letter on February 4, 1998. Lehman was replaced by a male employee less than a week later. Lehman contends Co-Counsel used the verbal altercation as a pretext for sex discrimination.

For a period of 18 months following her termination of employment in March 1998, Lehman exercised her rights under the Consolidated Budget Reconciliation Act ("COBRA") with respect to

defendants' medical coverage. During this time, Lehman incurred substantial medical expenses from infertility treatment. These expenses were not reimbursed by defendants.

## DISCUSSION

### I. Motion to dismiss standard

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may be dismissed only if there is no set of facts that would entitle the plaintiff to relief based on the allegations in the complaint. *Vonderohe v. B & S of Fort Wayne, Inc.*, 36 F.Supp.2d 1079, 1081 (7th Cir. 1999). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

### II. The ADA

The ADA prohibits discrimination by any "covered entity" against a "qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires." *Id.* at § 12111(8).

#### A. Qualified individual with a disability

Defendants contend Lehman has no standing to sue under the ADA because she is not a "qualified individual with a disability." Specifically, they assert she is not a qualified individual because

3

she was terminated from her position.[2] Defendants rely on *EEOC v. CNA Insurance Companies* for the proposition that former employees cannot sue their employer under the ADA because they no longer hold an "employment position," as required by 42 U.S.C. § 12111 (8). *See* 96 F.3d 1039, 1044 (7th Cir. 1996). This reading of the case is not entirely accurate. In *EEOC,* the plaintiff was suing for long term disability benefits after leaving her position because of her disability. The court held that benefits are protected only as long as employees are able to perform their jobs. Lehman contends she was denied infertility treatment *during* the course of her employment. Therefore, if she can establish a right to infertility treatment benefits while she was working for Co-Counsel, then she can sue under the ADA as a former employee. *See id* at 1045 (former employee can sue under the ADA when the protected interest arises during the period of employment).[3]

## B. Defendants' health benefit plan

Lehman alleges that defendants' exclusion of infertility treatment coverage in their health plan discriminates against her and a class of similarly situated disabled persons. This claim fails as a matter of law. Employers do not discriminate against infertile individuals solely because their benefit plans do not cover infertility treatment. As long as defendants offered both infertile and fertile individuals the same health care coverage, they are not liable for disability discrimination. *Id.* at 1044 (disability

---

[2]For purposes of this motion, defendants do not dispute that infertility is a disability under the ADA. *See e.g., Bielicki v. City of Chicago,* No. 97 C 1471, 1997 WL 260595, at *3 (N.D. Ill. May 8, 1997) (J. Conlon) ("Infertility, as a physiological disorder of the reproductive system, is a physical impairment under the ADA") (citing *Erickson v. Board of Governors,* 911 F.Supp. 316, 323 (N.D. Ill. 1995). *See also Bragdon v. Abbott,* 524 U.S. 624, 638 (1998) (reproduction constitutes a major life activity).

[3]*EEOC* also did not address whether employees fired for purely discriminatory reasons are considered unable to perform their jobs. In *EEOC,* there was no question that plaintiff's disability prevented her from performing the functions of her job.

discrimination occurs when terms of a health care plan are varied depending on whether the employee is disabled; court rejected argument that employers are required to offer parity between health benefits); *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 563 (7th Cir. 1999) (ADA is not violated when health benefits for the treatment of AIDS are limited, as long as all the employees receive the same benefits).[4] *See also Saks v. Franklin Covey Co.*, 117 F.Supp.2d 318, (S.D. NY 2000) (there is no ADA violation when an employer's health benefit plan "does not offer infertile people less pregnancy and fertility-related coverage than it offers to fertile people"); *Krauel v. Iowa Methodist Medical Center,* 95 F.3d 674, 678 (8th Cir. 1996) ("Insurance distinctions that apply equally to all insured employees, that is, to individuals with disabilities and to those who are not disabled, do not discriminate on the basis of disability").[5]

Lehman attempts to distinguish the cases supporting the conclusion that defendants' benefit plan does not violate the ADA. First, Lehman contends *EEOC* is not applicable because it addresses parity between physical and mental health benefits rather than parity between various physical health benefits. This argument is unpersuasive. *EEOC*'s holding rested on the fact that "all employees–the perfectly healthy, the physically disabled, and the mentally disabled–had a plan that promised them . . ." the same health benefits. 96 F.3d 1039, 1044 (7th Cir. 1996).

Lehman's effort to distinguish *Saks v. Franklin Covey Co.* because it "arose by way of summary judgment" after "it had been established . . . that the employer "treated its disabled and

---

[4]Contrary to Lehman's contention, the holding in *Doe v. Mutual of Omaha Insurance Co.* applies to the entire ADA. There is nothing in the opinion suggesting the holding was limited to Title III. *See* 179 F.3d 557 (7th Cir. 1999).

[5]*Krauel v. Iowa Methodist Medical Center*'s conclusion that reproduction is not a major life activity, subsequently undermined by *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998), was unrelated to its conclusion regarding disability discrimination.

nondisabled employees identically with respect to health coverage" is also unpersuasive. This distinction would be significant if Lehman alleged defendants provided fertile employees with different health coverage than infertile employees. Lehman includes no such allegation in her complaint. Moreover, even in her response brief, where she suggests the issue of identical coverage has not yet been determined, she merely alleges in a footnote that defendants had several different policies in effect during the relevant period. She never alleges that fertile employees were given infertility treatment coverage while infertile employees were not given this coverage. In fact, her focus in the footnote is on the lack of parity issue, namely the fact that defendants' health coverage benefits fertile employees more than infertile employees.

Lehman cites *Bielicki v. City of Chicago,* No. 97 C 1471, 1997 WL 260595 (N.D. Ill. 1997) for the proposition that failure of a self-insured employer to provide health care coverage for infertility treatment states a cause of action under the ADA. This reading of the case is an oversimplification. In *Bielicki,* the plaintiff alleged that the employer paid for infertility treatments for males but denied coverage for her infertility treatment. *See id.* at *4. This is a perfect example of what distinguishes Lehman's case from those where plaintiffs state a claim for disability discrimination pertaining to employee benefits. Lehman has not alleged that defendants provided infertility treatment for some employees but not others. Accordingly, Count II must be dismissed without prejudice.

## CONCLUSION

Defendants' motion to dismiss Count II is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

April 3, 2001